DAVID P. GARDNER, ISB No. 8766
WINSTON & CASHATT, LAWYERS
250 Northwest Boulevard, Suite 206
Coeur d'Alene, ID 83814
Telephone: (208) 667-2103
Facsimile: (208) 765-2121
dpg@winstoncashatt.com

Attorneys for Plaintiff

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF IDAHO

| In Re: | Case No. 13-20088-TLM |
|---|---|
| MICHAEL T. SACKETT and CHANTELL R. SACKETT, | |
| Debtors. | |
| THE CINCINNATI INSURANCE COMPANY, an Ohio corporation, | Adv. Proc. No. |
| Plaintiff, | |
| vs. | |
| MICHAEL T. SACKETT and CHANTELL R. SACKETT, Idaho citizens, and the marital community comprised thereof, | |
| Defendants. | |

**ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**
**(11 U.S.C. § 523(a)(4) AND 11 U.S.C. § 523(a)(6))**

Plaintiff The Cincinnati Insurance Company ("CIC"), by and through its attorneys

Winston & Cashatt, Lawyers, and for its Adversary Complaint against Michael T. Sackett,

Chantell R. Sackett, and the marital community composed thereof, to Determine

Dischargeability of Debt (11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6)) alleges as follows:

ADVERSARY COMPLAINT - Page 1

## PARTIES

1. CIC is an insurance company incorporated in the State of Ohio with its principal place of business in Cincinnati, Ohio.

2. Michael T. Sackett ("Debtor"), along with his wife Chantell R. Sackett, is a Debtor in the above captioned Chapter 7 bankruptcy case pursuant to a voluntary petition filed on February 1, 2013.

3. Upon information and belief, all acts alleged of Debtor were done while married and on behalf of and for the benefit of the martial community.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §§157(a), (b) (1), (b)(2), (I), and (O), §1334, and 11 U.S.C. §523.

5. Venue is proper under 28 U.S.C. §1409(a).

6. All parties consent to adjudication of this matter by this Court.

## FACTS COMMON TO ALL COUNTS

7. CIC is in the business of, among other things, providing surety bonds to contractors in connection with publicly owned construction projects throughout the United States.

8. Debtor was the owner and officer of Mike Sackett, Inc. d/b/a Sackett Contracting & Excavating ("Sackett Contracting"). Sackett Contracting was a construction company engaged in the business of providing services as an excavation contractor performing excavating,

grading, and building underground utilities in Washington and Idaho. Sackett Contracting filed for bankruptcy relief on or about December 22, 2010.

9.    At all times relevant hereto, Debtor was the sole owner and officer of Sackett Contracting.

10.    At Debtor's direct instruction and/or with his knowledge, Sackett Contracting applied to CIC for the extension of surety credit in connection with Sackett Contracting's construction business.

11.    As a condition and prior to extending surety credit, CIC required Sackett Contracting to submit to CIC various documents attesting to Debtor's and Sackett Contracting's respective financial conditions and business operations.

12.    Among the various documents provided by Debtor and Sackett Contracting in response to CIC's underwriting requests were statements of financial condition for both Debtor and Sackett Contracting.

13.    CIC relied upon this information and the financial information submitted by Debtor in making CIC's decision to extend surety credit to Sackett Contracting.

14.    In reliance upon the financial documentation submitted by Debtor, CIC provided surety credit (surety bonds) on behalf of Sackett Contracting, as principal, and in favor of a public body, as obligee. The bonds secured the obligations of Sackett Contracting to perform construction work required by the contract with the public body and to pay for labor and materials required for the completion of the contract.

ADVERSARY COMPLAINT - Page 3

15. Sackett Contracting entered into a construction contract in the State of Idaho with the Granite Reeder Water and Sewer District for a project known as the Granite Reeder Wastewater Collection System (the "Project").

16. At the indemnitors' request and pursuant to Sackett Contracting's contract with Granite Reeder, CIC, as surety, issued payment and performance surety bonds, Bond No. B0321114 ("Bonds"), on behalf of Sackett Contracting, as principal, in connection with and as security for Sackett Contracting's performance on the Project.

17. Based upon Debtor's representation of his financial assets and that he would follow the terms of the indemnity agreement, discussed below, CIC issued performance and payment surety bonds with a total penal sum (CIC's maximum exposure) in the amount of $6,445,467.12.

18. As a condition for and in consideration of CIC's issuance of the Bonds on behalf of Sackett Contracting, CIC required Debtor, Chantell R. Sackett, Priest Lake Storage, LLC and Sackett & Sackett, LLC (collectively, "Indemnitors") to enter into a written Agreement of Indemnity ("Indemnity Agreement") with CIC. A true and correct copy of the Indemnity Agreement executed by the Indemnitors is attached hereto as Exhibit A.

19. The Indemnity Agreement requires the Indemnitors to indemnify and hold CIC harmless, in part, from all liability under the Bonds it issues on behalf of Sackett Contracting. The Indemnity Agreement provides, in relevant part, the following:

> The Undersigned shall exonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which the Surety may sustain or incur: (i) by reason of

having executed or procured the execution of any Bond or Bonds; (ii) by reason of the failure of the Undersigned to perform or comply with the covenants and conditions of this Agreement; or (iii) in enforcing any of the covenants and conditions of this Agreement.

(Exhibit A, SECOND).

20.     Pursuant to the Indemnity Agreement, Sackett Contracting and each of the Indemnitors agreed to treat, whether in their possession or not, all contract funds either paid or to be paid on the bonded Project as trust funds for the benefit and payment of Sackett Contracting's obligations incurred in completion of the bonded Project including, without limitation, Sackett Contracting's subcontractors, suppliers, materialmen, and other project vendors. (*See* Exhibit A, FOURTH).

21.     The Indemnity Agreement permits CIC to pay or compromise any claim or demand on the Bonds, and states that any such payment or compromise on any claim against the Bonds is binding on the Indemnitors. (*See* Exhibit A, SECOND).

22.     Specifically, the Indemnity Agreement provides, in relevant part, the following:

> The Surety may pay or compromise any claim, demand, suit, judgment or expense arising out of such Bond or Bonds and any such payment or compromise shall be binding upon the Undersigned and included as a liability, loss or expense covered by this Indemnity Agreement, provided the same was made by the Surety in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all of the circumstances. In the event of any such payment or compromise by the Surety, an itemized statement thereof sworn to by any representative of the surety familiar with the facts, or the voucher or vouchers or other evidence of such payment or compromise shall be prima facie evidence of the facts and the amount of the liability of the Undersigned under this Agreement.

(Exhibit A, SECOND).

ADVERSARY COMPLAINT - Page 5

23. The Indemnity Agreement also provides that a sworn, itemized statement of any such payment or compromise shall be *prima facie* evidence of the facts and the amount of Indemnitors' liability to CIC. (*See* Exhibit A, SECOND).

24. Specifically, the Indemnity Agreement, in relevant part, states:

> In the event of any such payment or compromise by the Surety, an itemized statement thereof sworn to by any representative of the Surety familiar with the facts, or the voucher or vouchers or other evidence of such payment or compromise shall be prima facie evidence of the facts and the amount of the liability of the Undersigned under this Agreement.

(Exhibit A, SECOND).

25. The Indemnity Agreement provides for situations wherein the Indemnitors will be found in default of the Indemnity Agreement. (*See* Exhibit A, SEVENTH).

26. The Indemnity Agreement states, in relevant part, the following:

> Events of default shall be: (a) any abandonment, forfeiture, or breach of or failure, refusal or inability to perform, any contract covered by a Bond or any Bond Liability; (b) the failure, delay, refusal or inability of the Principal to pay bills or other indebtedness incurred in, or in connection with, the performance of any contact covered by a Bond; (c) the failure to perform, or comply with, any of the terms, covenants and obligations of this Agreement; (d) the failure to pay and discharge, when due, any other indebtedness of the Principal to the surety; (e) any assignment by the Principal for the benefit of creditors, or the appointment, or application by the Principal for the appointment, of a receiver or trustee for the Principal or its property, whether insolvent or not, or an application by the Principal for reorganization or arrangements under the terms of the National Bankruptcy Act… (g) … any change or threat of change in the character, identity, control, management, beneficial ownership or existence of the Principal including where control of management is taken over by others without the express written consent of the Surety.

(Exhibit A, SEVENTH).

ADVERSARY COMPLAINT - Page 6

**The Indemnitors Default Under the Indemnity Agreement and Bond Claims**

27.     Prior to and after both Petition Dates, CIC has received claims under the payment bond from allegedly unpaid subcontractors and suppliers ("Claimants") of Sackett Contracting alleging that Sackett Contracting failed to make payments to the Claimants for work performed in furtherance of performance of the Projects.

28.     Under the terms of the Indemnity Agreement, the failure, delay, or refusal to pay bills or indebtedness in connection with any contract covered by a Bond issued by CIC constitutes a default of the Indemnity Agreement. (*See* Exhibit A, SEVENTH).

29.     Prior to and after the Petition Date, the Bond Obligee notified CIC that Sackett Contracting had not completed all of the work required of Sackett Contracting as set forth in the contract.

30.     Under the terms of the Indemnity Agreement, the Indemnitors' failure to complete the contract covered by the Bond constitutes a default under the Indemnity Agreement. (*See* Exhibit A, SEVENTH).

31.     CIC received numerous claims from vendors of Sackett Contracting that alleged that they had not received payment from Sackett Contracting for labor and/or material that each furnished to the Project.

32.     Namely, CIC received the following claims of Sackett Contracting's unpaid vendors on the Project and in order for CIC to discharge its obligations under the payment bond because Sackett Contracting failed to pay, CIC paid the below listed amount to each vendor:

    a.     CIC received a claim against the payment bond for the Project from Sackett Contracting's subcontractor/supplier HD Fowler, Co., for work performed by HD Fowler, Co.,

on the Project.  After investigating the claim, because of Sackett Contracting's failure to pay, CIC paid HD Fowler, Co., $370,755.46 to resolve its bond claim.

      b.      CIC received a claim against the payment bond from Sackett Contracting's subcontractor/supplier Consolidated Electric Co., for work performed by Consolidated Electric Co., on the Project.  After investigating the claim, because of Sackett Contracting's failure to pay, CIC paid Consolidated Electric Co., $36,107.50 to resolve its bond claim.

      c.      CIC received a claim against the payment bond from Sackett Contracting's subcontractor/supplier TML Construction, Inc., for work performed by TML Construction, Inc., on the Project.  After investigating the claim because of Sackett Contracting's failure to pay, CIC paid TML Construction, Inc., $7,276.10 to resolve its bond claim.

      d.      CIC received a claim against the payment bond from Sackett Contracting's subcontractor/supplier Empire Electric, Inc., for work performed by Empire Electric, Inc., on the Project.  After investigating the claim because of Sackett Contracting's failure to pay, CIC paid Empire Electric, Inc., $56,366.38 to resolve its bond claim.

      e.      CIC received a claim against the payment bond from Sackett Contracting's subcontractor/supplier Thorco, Inc., for work performed by Thorco, Inc., on the Project.  After investigating the claim because of Sackett Contracting's failure to pay, CIC paid Thorco, Inc., $1,807.50 to resolve its bond claim.

      f.      CIC received a claim against the payment bond from Sackett Contracting's subcontractor/supplier Stone Creek Land Design & Development for work performed by Stone Creek Land Design & Development on the Project.  After investigating the claim because of Sackett Contracting's failure to pay, CIC paid Stone Creek Land Design & Development $33,270.80 to resolve its bond claim.

      g.      CIC received a claim against the payment bond from Sackett Contracting's subcontractor/supplier Strata Geotechnical Engineering for work performed by Strata Geotechnical Engineering on the Project.  After investigating the claim because of Sackett Contracting's failure to pay, CIC paid Strata Geotechnical Engineering $5,669.74 to resolve its bond claim.

      h.      CIC received a claim against the payment bond from Sackett Contracting's subcontractor/supplier North Idaho Propane, Inc., for work performed by North Idaho Propane, Inc., on the Project.  After investigating the claim because of Sackett Contracting's failure to pay, CIC paid North Idaho Propane, Inc., $1,530.81 to resolve its bond claim.

33. CIC has recovered the remaining contract balance on the Project in the amount of $19,863.47 from Granite Reeder.

34. As of February, 2013, CIC is owed the amount of its losses which totals $593,366.85, which includes attorney and consulting fees and expenses which are recoverable under the Indemnity Agreement.

35. On October 31, 2011, CIC issued a written demand to the Indemnitors requesting payment for its current loss in accordance with the terms of the Indemnity Agreement. A Copy of CIC's indemnity demand is attached hereto as Exhibit B.

36. Despite demand, the Indemnitors have not indemnified or paid CIC for its loss.

37. Debtor, as President of Sackett Contracting and as an indemnitor to CIC, failed to use the contract funds that were paid to Sackett Contracting as required by Paragraph 4 of the Indemnity Agreement.

38. By applying for surety credit and by entering into the bonded contract, Debtor represented to CIC that there were sufficient contract funds being held by the owner and that he as President and owner of Sackett Contracting would use the bonded contract funds to pay all of the respective project vendors and to complete the bonded project.

///
///
///
///
///
///

39. Debtor, as President and owner of Sackett Contracting and as an indemnitor to CIC, improperly used the contract funds Sackett Contracting received from the Granite Reeder as evidenced and detailed below:

| Obligee | Project Name | Adjusted Contract Amount with Change Orders | Pre Petition, Sackett Contracting Was Paid The Following Contract Funds | CIC's Payments on Bond Claims | Contract Funds Available and Paid to CIC |
|---|---|---|---|---|---|
| Granite Reeder | Granite Reeder Wastewater Collection System | $3,245,377.14 (last paid pay application 17a) | $3,261,407.90 (last paid pay application 17a) | $564,664.43* | $19,863.97 |

*Includes Completion Contractor and Granite Reeder costs to complete.

40. As stated in the Indemnity Agreement, Debtor and Sackett Contracting were required to treat all contract funds as trust funds in order to pay project vendors. (*See* Exhibit A).

41. Despite this express contractual provision, Debtor used contract funds paid to Debtor from the Owner of the Project (the contract funds paid to him as president and owner of Sackett Contracting) for improper purposes that did not involve payment of Sackett Contracting's subcontractors, suppliers, materialmen, and/or other project vendors on the Project.

42. As detailed above, due to Debtor's failure to use the bonded contract funds as trust funds, (a) in order to discharge its obligations under the Bonds, CIC was required to pay numerous vendors of Sackett Contracting and (b) in order to discharge its obligations under the Bonds, CIC was required to arrange for Granite Reeder to complete the Project.

43. Debtor, personally and in his capacity as owner of Sackett Contracting, intended to harm CIC by taking and using monies (the bonded contract funds) from the bond obligee and

ADVERSARY COMPLAINT - Page 10

not passing on those funds (a) to Sackett Contracting's Project vendors and (b) to complete the bonded Project.  Debtor's intentional misuse of contract funds was willful and malicious while acting in his fiduciary capacity as owner of Sackett Contracting.

## COUNT I

### §523(a)(4) The Debt Is Non-Dischargeable As A Result Of The Debtors Defalcation While Acting In A Fiduciary Capacity

44.     CIC incorporates all allegations contained above.

45.     Pursuant to §523(a)(4), a discharge under §§727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

46.     Pursuant to the Indemnity Agreement, Debtor and the other Indemnitors agreed, among other things, to pay to CIC upon demand all loss, interest, costs, and expenses incurred by CIC by reason of having executed any Bond, or incurred by CIC on account of any Default under the Indemnity Agreement by any of the Indemnitors.

47.     Pursuant to Paragraph 4 of the Indemnity Agreement, Debtor and the Indemnitors agreed to treat all funds received under any contract as trust funds for the benefit and payment of all obligations under the bonded contract.  Namely, Paragraph 4 provides, in part, the following:

> The Principal and Indemnitors agree and hereby expressly declare that all funds due or to become due under any contract covered by a Bond are Trust Funds, whether in the possession of the Principal or another, for the benefit and payment of all persons to whom the Principal incurs obligations in the performance of such contract, for which the Surety would be liable under the Bond. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the Trust Funds.

Exhibit A.

ADVERSARY COMPLAINT - Page 11

48. Debtor, as owner and officer of Sackett Contracting, agreed to ensure and use the contract funds Sackett Contracting received from Granite Reeder to pay Sackett Contracting's project vendors and to complete the Project.

49. As owner and officer of Sackett Contracting, Debtor willfully and maliciously breached his fiduciary duty under the Indemnity Agreement and the bonded contract by failing to treat the contract funds as trust funds and pay the contract funds to Sackett Contracting's project vendors and to use the funds to complete the underlying bonded contract.

50. CIC has received payment bond and performance bond claims from the various subcontractors and suppliers of Sackett Contracting that Sackett failed to pay and a claim from Granite Reeder to finish the Project because Sackett Contracting failed to complete the Project. During CIC's investigation of bond claims, CIC discovered that the remaining contract balances on the bonded project were significantly depleted by Debtor and the remaining contract funds were insufficient to discharge CIC's obligations under the bonds to ensure completion of the Project and payment of the unpaid Project vendors.

51. Pursuant to the trust fund provision of the Indemnity Agreement and the obligation of Sackett Contracting to pay its vendors pursuant to the contract between Sackett Contracting and Granite Reeder, Debtor was required to hold, in trust, all contract funds that he received for the use and benefit of the Project vendors that Sackett Contracting engaged on the bonded Project and to use the contract funds to complete the Project.

52. Based upon the claims received by CIC and the amounts paid out by CIC to-date, Debtor did not use the contract funds as trust funds to pay Sackett Contracting's Project vendors and to complete the Project.

ADVERSARY COMPLAINT - Page 12

53. Instead, as owner and officer of Sackett Contracting, Debtor willfully and maliciously breached his contractual obligations as a fiduciary to CIC and Sackett Contracting's Project vendors.

54. As a direct result of Debtor's willful and malicious actions while acting as owner and officer of Sackett Contracting and indemnitor, CIC has incurred in excess of $593,366.85.

55. Debtor, personally and in his capacity as co-owner and officer of Sackett Contracting, intended to harm CIC by obtaining the contract funds from Project owner and not using those monies as he was contractually required to – Debtor did not pass on those funds to Sackett Contracting's Project vendors and Debtor did not use the contract funds to complete the bonded Project.

56. Such actions and intentional misuse of contract funds by Debtor were willful and malicious misrepresentations while acting in his fiduciary capacity as owner of Sackett Contracting.

57. Based upon Debtor's actions, Debtor's debt to CIC is not dischargeable under Bankruptcy Code §523(a)(4).

## COUNT II

### §523(a)(6) Non-Dischargeability For Wilful and Malicious Injury

58. CIC incorporates all allegations contained above.

59. Under Bankruptcy Code §523(a)(6), a debt is not dischargeable if it arises from wilful and malicious injury by the debtor to another entity or to the property of another entity.

60. Debtor willfully, maliciously, and unlawfully took contract funds that did not belong to him with the deliberate intent to convert it to his own use without consent of the Project vendors and CIC.

61. As of February 2013 CIC has been damaged in the amount of its loss plus attorneys fees and interest, in the amount of $593,366.85 as the proximate result of Debtor's unlawful taking of monies and as a result of such action Debtor is indebted to CIC in the amount of said damages.

62. The debt arises from wilful and malicious injury.

63. The debt is non dischargeable under Bankruptcy Code §523(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, The Cincinnati Insurance Company prays for the following relief:

a. Judgment against the Debtor, Michael T. Sackett, in the amount of its actual costs and estimated loss to date, plus all cost and expense, including attorneys and consulting fees and interest, in the amount that CIC has incurred. As of February 2013, the amount incurred by CIC totals $593,366.85;

b. A finding that the debt embodied by this judgment is non dischargeable under 11 U.S.C. §523(a)(4) for the reasons set forth above;

c. Together with such additional relief that this Court deems equitable and just.

DATED this 28th day of May, 2013.

/s/David P. Gardner
DAVID P. GARDNER, ISBA No. 8766
WINSTON & CASHATT, LAWYERS
Attorneys for Plaintiff The Cincinnati Insurance Company