# THE CINCINNATI INSURANCE COMPANY
## AGREEMENT OF INDEMNITY

6200 S. Gilmore Road
Fairfield, OH 45014-5141

This Agreement of Indemnity executed and delivered by Principal(s):

Mike Sackett, Inc. DBA Sackett Contracting & Excavating

and Indemnitors:

Priest Lake Storage, LLC, Sackett & Sackett, LLC

Michael T. Sackett, Chantell R. Sackett

to The Cincinnati Insurance Company as Surety. The Principal(s) and Indemnitors are sometimes referred to hereafter collectively as "Undersigned."

## WITNESSETH:

WHEREAS, Principal, in his own name, or as co-adventurer with others may desire, or be required, to execute and deliver or procure the execution and delivery of Bonds as hereinafter defined, or Principal, or one or more of the Undersigned may request the Surety to refrain from canceling such a Bond; and

WHEREAS, the Undersigned understand that the Surety expressly requires the delivery of this Indemnity Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining from canceling said bonds; and

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of Bonds by the Principal or in the Surety's refraining from canceling such Bonds.

NOW, THEREFORE, in consideration of the execution and delivery by the Surety of one or more Bonds or its refraining from attempting to cancel the same, the Undersigned, for themselves, their heirs, executors, administrators, and assigns, both jointly and severally, covenant and agree with the Surety as follows:

## PREMIUMS

FIRST: The Undersigned will pay to the Surety when due all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rate, or as may be agreed.

## INDEMNITY

SECOND: The Undersigned shall exonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which the Surety may sustain or incur: (i) by reason of having executed or procured the execution of any Bond or Bonds; (ii) by reason of the failure of the Undersigned to perform or comply with the covenants and conditions of this Agreement; or (iii) in enforcing any of the covenants and conditions of this Agreement. The Surety may pay or compromise any claim, demand, suit, judgment or expense arising out of such Bond or Bonds and any such payment or compromise shall be binding upon the Undersigned and included as a liability, loss or expense covered by this Indemnity Agreement, provided the same was made by the Surety in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all of the circumstances. In the event of any such payment or compromise by the Surety, an itemized statement thereof sworn to by any representative of the Surety familiar with the facts, or the voucher or vouchers or other evidence of such payment or compromise shall be prima facie evidence of the facts and the amount of the liability of the Undersigned under this Agreement. If the Undersigned desire that a claim or demand against the Surety be resisted and litigated, the Undersigned shall: (i) give notice to the Surety to this effect; (ii) simultaneously deposit with the Surety cash or other collateral satisfactory to the Surety in an amount determined by the Surety to be sufficient to cover the claim or demand and interest thereon to the probable date of disposition plus attorneys' fees; (iii) or deposit simultaneously with the Surety cash or collateral satisfactory to the Surety; and (iv) take over the resistance and litigation of the claim or demand using competent counsel approved in advance by the Surety.



## ASSIGNMENT -- POSSESSION

THIRD: With respect to each Bond executed by the Surety, the Principal and Indemnitors presently assign, transfer and convey to the Surety, but subject to the trust herein created; (a) all monies due or to become due to the Principal under or as a result of the contract covered by the Bond, including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work and proceeds of damage claims; (b) all right, title and interest of the Principal in and to all supplies, tools, plant, equipment and materials of every nature and description that may now or hereafter be in, on or around the site of, or the work under, the contract covered by the Bond, and materials purchased or ordered for the performance of said contract whether in the process of construction, in transit to the site, or in storage elsewhere; (c) all right, title and interest of the Principal in and to all subcontracts, let or to be let, in connection with said contract covered by the Bond and in and to all Surety Bonds covering such subcontracts; and (d) all actions, causes of actions, claims and demands whatsoever with the Principal subcontractors, laborers, materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of the contract covered by the Bond, and against any Surety or Sureties of such subcontractors, laborers or materialmen. The foregoing Assignment shall be effective as of the date of the execution and delivery of this Agreement as to each contract covered by bonds executed prior to such date although nothing herein shall limit the right of the Surety to claim under any prior Assignment. With respect to any Bond executed and delivered on or after the date of execution and delivery of this Agreement, the Assignment shall be effective as of the effective date of the Bond.

## TRUST FUNDS

FOURTH: The Principal and Indemnitors agree and hereby expressly declare that all funds due or to become due under any contract covered by a Bond are Trust Funds, whether in the possession of the Principal or another, for the benefit and payment of all persons to whom the Principal incurs obligations in the performance of such contract, for which the Surety would be liable under the Bond. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the Trust Funds. Principal shall, upon demand of the surety and in implementation of the Trust or Trusts herein created, open an account or accounts with a bank or similar depository designated by the Principal and approved by the Surety, which account or accounts shall be designated as a Trust Account or Accounts for the deposit of such Trust Funds, and shall deposit therein all monies received pursuant to said contract or contracts. Withdrawal from such account or accounts shall be by check or similar instrument signed by the Principal and must be countersigned by a representative of the Surety. Said Trust or Trusts shall terminate on the payment by the Principal of all the contractual obligations for the payment of which the Trust or Trusts are hereby created or upon the expiration of twenty (20) years from the date hereof, whichever shall first occur.

## UNIFORM COMMERCIAL CODE

FIFTH: This Agreement constitutes a Security Agreement to the Surety and a Financing Statement in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under such Code, and the Undersigned will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such states, counties or other places as the Surety shall deem necessary or desirable.

## TAKEOVER

SIXTH: In the event of any breach or default asserted by the Obligee, including the complaint by any beneficiary of any Bond, the Surety shall have the right, at its option, and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work and all funds under any contract or contracts covered by any Bond or Bonds and at the expense of the Principal and Indemnitors to complete or arrange for the completion of the same and pay any beneficiary, and the Indemnitors shall promptly and upon demand pay to the Surety all losses and expenses so incurred including interest and attorneys' fees.

## DEFAULT

SEVENTH: Events of default shall be: (a) any abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, any contract covered by a Bond or any Bond liability; (b) the failure, delay, refusal or inability of the Principal to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond; (c) the failure to perform, or comply with, any of the terms, covenants and obligations of this Agreement;

(d) the failure to pay and discharge, when due, any other indebtedness of the Principal to the Surety; (e) any assignment by the Principal for the benefit of creditors, or the appointment, or an application by the Principal for the appointment, of a receiver or trustee for the Principal or its property, whether insolvent or not, or an application by the Principal for reorganization or arrangements under the terms of the National Bankruptcy Act or any similar laws of any state, possession or territory of the United States, or if proceedings for the appointment of a receiver or trustee, for liquidation or for the reorganization or arrangement of the Principal shall be initiated by other persons, and the continuance of those proceedings for a period of thirty (30) days; (f) the commencement or continuation of any proceeding which deprive the Principal of, or interferes with, its use of any of the supplies, tools, plant, machinery, equipment or materials in, on or around the site of, or stored elsewhere, or the work under the contract covered by any such Bonds. Any proceeding is intended to include a levy or levies by the United States of America, any State, County or Municipality for taxes; and (g) if the Principal is an individual, the Principal's dying, absconding, disappearing, incompetency, being convicted of a felony or misdemeanor and imprisonment, and if the Principal is any other type of entity, any change or threat of change in the character, identity, control, management, beneficial ownership or existence of the Principal including where control of management is taken over by others without the express written consent of the Surety.

### CHANGES

EIGHTH: The Surety is authorized, without notice to or knowledge of the Undersigned, to assent to any changes whatsoever in any Bond and any contract covered by the Bond, including, but not limited to, any change in the time for the completion of the contract and for payments or advances thereunder, to assent to or take any Assignment or Assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any Bond and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and Obligees and with the same or larger or smaller penalties, and the Undersigned shall remain bound under the terms of this Agreement even though any such assent by the Surety does or may substantially increase the liability of the Undersigned.

NINTH: Separate suits may be brought on this Agreement against any or all of the Undersigned and the bringing of a suit or the recovery of a judgment upon any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action whether therefore or thereafter arising. The Surety is expressly authorized to settle any claim based upon this Agreement with any one or more of the Undersigned individually, and such settlement or compromise shall not affect the liability of any of the rest of the Undersigned.

TENTH: The liability of the Principal and Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such Bond, nor by any claim that other Indemnity or Security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

### ADVANCES—LOANS

ELEVENTH: The Surety may from time to time make or guarantee advances or loans to or for the account of the Principal to be used in the performance of the obligations of the Principal under any contract covered by a Bond or Bonds without the necessity of seeing to the application of the proceeds thereof; and the Undersigned shall be obligated to indemnify the Surety in accordance with the terms of this Agreement for the amount of all such advances and loans, notwithstanding that the proceeds or any part thereof have not been so used by the Principal.

### RIGHT TO INFORMATION—BOOKS AND RECORDS

TWELFTH: The Undersigned will furnish to the Surety such information as it may request from time to time concerning the financial condition of the Undersigned, the status of work under any contract covered by a Bond or Bonds, the condition of the performance of any such contract and the payment of obligations incurred in connection therewith. The Surety may obtain information concerning the affairs and operation of the Undersigned and any transaction between or among the Undersigned from any banks, depositories, Obligees on any Bonds, materialmen, supply houses, credit reporting agencies or other persons, who are hereby expressly authorized to furnish such information to the Surety. At any time, at the sole discretion of the Surety, and until such time as the liability of the Surety under any and all said Bond or Bonds shall have been terminated, the Surety shall have the right of access to the books, records and accounts of the Principal including but not limited to the working papers of the accountant who has prepared the financial statements for use of Surety, and the Principal and Indemnitors hereby waive in favor of the Surety its or their accountant/client privilege under the laws of any State. The surety shall have the right to examine the Principal's and Indemnitors' records by an accountant of its choice.

### DECLINE EXECUTION

THIRTEENTH: The Surety has an absolute right to decline the execution of any Bond applied for without incurring any liability whatever to the Undersigned. If the Surety shall execute a Bid or Proposal Bond, or any similar undertaking, it may nevertheless have the absolute right to refuse to execute any and all Completion, Performance or Payment Bonds that may be required in connection with any award made on the proposal for which the Bond or undertaking is given. The Principal shall have the right to procure from another Surety any Bond that has been declined by the Surety herein in connection with any award under the proposal for which the Bond or undertaking is given. The Undersigned shall indemnify the Surety for all costs including attorneys' fees upon any lawsuit brought under this provision by the Principal.

### WAIVER OF NOTICE OF EXECUTION

FOURTEENTH: The Undersigned hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Undersigned.

### WAIVER OF HOMESTEAD RIGHT

FIFTEENTH: The Undersigned waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution of sale or other legal process under the laws of any State, Territory or Possession of the United States.

### SETTLEMENTS

SIXTEENTH: The Surety may pay or compromise any claim, demand, suit, judgment or expense arising out of any Bond or Bonds and any such payment or compromise shall be binding upon the Undersigned and included as a liability, loss or expense covered by this Indemnity Agreement, provided the same was made by the Surety in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all circumstances.

SEVENTEENTH: The Undersigned agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Surety is construed toward its Obligee and Beneficiaries under its Bond or Bonds.

## DEFINITIONS

EIGHTEENTH: As used in this Agreement, words in the singular include the plural and words in the plural include the singular. The masculine pronoun shall be read as feminine or neuter as circumstances require. The words "Principal," "Indemnitor" and "Undersigned" shall mean and include individuals, partnerships, corporations and associations. The term "Contract" shall include all documents, comprised of the contract documents, including general and special conditions, specifications and drawings. The word "Bond" shall mean a contract of suretyship, guaranty or indemnity, an agreement or consent to provide such a contract, and the continuation, extension, alterations, renewal or substitution of such a contract, agreement or consent.

## PROTECTION OF OTHER SURETIES

NINETEENTH: If the Surety procures the execution of any Bond by other Sureties or executes the Bond with Co-Sureties, then all of the terms and conditions of this Agreement shall inure to the benefit, as their interests may appear, of such other Sureties and Co-Sureties who shall have the right to maintain an action or actions on this Agreement to enforce their rights hereunder, however any action by Surety herein may include the rights of other Sureties and need not require the inclusion or intervention of any other participating Sureties or Co-Sureties.

## RESERVE—DEPOSIT

TWENTIETH: If for any reason the Surety shall deem it necessary to set up or to increase a reserve to cover possible liability, loss, attorneys' fees and expenses for which the Undersigned will be obligated to indemnify the Surety under the terms of this Agreement, the Undersigned will deposit with the Surety, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to the Surety for such liability, loss, attorneys' fees and expenses. The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss, attorneys' fees and expenses for which the Undersigned would be obligated to indemnify the Surety under the terms of this Agreement. Surety shall have no obligation to invest, or to provide a return on, the deposit. The undersigned shall be entitled to the return of any unused portion of the deposit, upon termination of the liability of the Surety on the bonds and the performance by the Undersigned of all obligations to the Surety under the terms of this Agreement. The Surety's demands shall be sufficient if sent by Registered or Certified Mail to the Undersigned at the address stated herein, or at the addresses of the Undersigned last known to the Surety, whether or not actually received. The return by the United States Post Office of any Registered or Certified Mail to the Surety where notice is given on three (3) days to the addressee shall be acknowledgement by the Undersigned that notice was received.

## ATTORNEY-IN-FACT

TWENTY-FIRST: Each of the Undersigned hereby irrevocably nominate, constitute, appoint and hereby designate the Surety or any person or persons designated by the Surety as his attorney-in-fact with the right to exercise all of his rights assigned, transferred or set over to the Surety by this Agreement and in his name to execute and deliver any and all additional or other assignments, instruments, or documents deemed necessary or desirable by the Surety: (i) to vest in the Surety absolute title to any and all monies, property and rights hereby assigned; (ii) to provide the protection and rights to the Surety contemplated by all of the provisions of this Agreement; and (iii) to give notice to any Obligee that checks representing any amounts due under any contract, including retainage and damages, be sent to Surety, and the Surety is empowered by this Agreement to endorse all checks payable to the Undersigned for deposit in the account of the Surety as attorney-in-fact for the Undersigned. The Surety or any person or persons designated shall have the absolute power to execute any and all needful and necessary documents to conclude any contract.

## NOTICE OF CLAIMS

TWENTY-SECOND: If the Undersigned become aware of any demand, notice or proceeding which may result in liability to the Surety under any Bond, the Undersigned shall notify the Surety immediately thereof in writing. The Indemnitors shall have no rights or indemnity against the Principal or his property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

## DISCHARGE FROM SURETYSHIP

TWENTY-THIRD: The Undersigned will, at any time upon the request of the Surety, procure the discharge of the Surety from any Bond and from all liability by reason thereof. The Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond.

## SURETYSHIP COVERED

TWENTY-FOURTH: This Agreement applies to all Bonds executed or procured by the Surety for the Principal, in its own name or as co-adventurer with others, whether prior or subsequent to the execution and delivery of this Agreement, and from time to time until this Agreement is terminated in accordance with its terms.

## NATURE OF RIGHTS

TWENTY-FIFTH: All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of the Surety to pursue any legal remedy against any one or more of the Undersigned shall not release or waive any right against any other of the Undersigned. Surety is not required to exhaust its remedies or rights against the Principal or to await receipt of any dividends from the legal representatives of the Principal before asserting its rights under this Agreement against the Indemnitors. The rights, powers, and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu

of, any and all other rights, powers and remedies which the Surety may have or acquire against the Undersigned or others whether by the terms of this Agreement, by operation of law, or otherwise.

## WAIVER OF JURISDICTION, VENUE AND PERSONAL JURISDICTION

TWENTY-SIXTH: The Undersigned consent to personal jurisdiction and venue and may be sued by Surety in any Court of any State and County where said Court would have venue and personal jurisdiction over the Surety.

## MODIFICATIONS

TWENTY-SEVENTH: The rights and remedies afforded to the Surety by the terms of this Agreement may not be waived or modified orally and no written change or modification shall be effective until signed by an officer of the Surety.

## TERMINATION

TWENTY-EIGHTH: This is a continuing agreement which remains in full force and effect until terminated. This Agreement may be terminated by the Indemnitors or by any one or more of them upon twenty (20) days written notice sent by Registered or Certified Mail to the Surety, attention BOND DEPARTMENT, at its Home Office, 6200 S. Gilmore Road, Fairfield, OH 45014-5141, but any such notice of termination shall not operate to modify, bar, discharge, limit, affect, or impair the obligations of the Undersigned under this Agreement with respect to Bonds which are executed prior to such termination or with respect to Bonds executed after the date of such termination: (i) upon the award of a contract to the Principal on a bid or proposal with respect to which the Surety has executed a bid or a proposal Bond or a similar undertaking prior to such date; or (ii) for which the surety has become obligated, prior to such date, to execute. Further, such notice of termination shall operate only with respect to those of the Undersigned upon whose behalf such notice of termination shall have been given.

## TIME LIMITATIONS TO BRING SUIT

**TWENTY-NINTH:** The Surety and the Undersigned agree that the Surety shall have twenty (20) years from the date of breach of this Agreement to bring any action against the Undersigned. If this provision is void as against public policy in the State where the action is brought, then the maximum time allowed to bring suit by that State is incorporated herein by reference.

## FAIR CREDIT REPORTING ACT PRE-NOTIFICATION

**THIRTIETH:** Principal and Indemnitor expressly authorize the Surety to Access their credit reports and to make such pertinent inquires as my be necessary from third party sources for the following purposes: (A) to verify information supplied to the Surety, (B) for underwriting purposes, and (C) upon receipt of a Notice of Claim or potential claim under any bond, for debt collection.

## REPRESENTATION

THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

IN WITNESS WHEREOF, the Undersigned who are individuals have hereunto set their hands and seals and the Undersigned who are partnerships, corporations or unincorporated associations have caused this Agreement to be duly executed this __20__ day of __July__, __2009__.

X _____ Witness

Mike Sackett, Inc. DBA Sackett Contracting & Excavating
(Name of Principal)

BY: _____ (SEAL)
Michael T. Sackett, President

Michael T. Sackett, President
(Type Name)

28162 Hwy 57
(Street Address)

Priest River, ID 83856
(City, State and Zip Code)

84-1368218
(Federal Tax ID)

Subscribed and sworn to before me
This __20__ day of __July__, 20__09__

NOTARY PUBLIC
My Commission expires: 10/22/2013
(AFFIX SEAL)

X _____ Witness

BY: _____ (SEAL)
Chantell R. Sackett, Secretary

Chantell R. Sackett, Secretary
(Type Name)

28162 Hwy 57
(Street Address)

Priest River, ID 83856
(City, State and Zip Code)

84-1368218
(Federal Tax ID)

Subscribed and sworn to before me
This __20__ day of __July__, 20__09__

NOTARY PUBLIC
My Commission expires: 10/22/2013
(AFFIX SEAL)

ORIGINAL IN SAFEKEEPING FILE

**OTHER INDEMNITORS:**

X _____ (Signature)
Witness

Subscribed and sworn to before me
This **20** day of **July**, 20 **09**

_____
NOTARY PUBLIC
My Commission expires: **10/22/2013**
(AFFIX SEAL)

Priest Lake Storage, LLC
(Name of Indemnitor)

BY: _____ (Signature)
Chantell R. Sackett, Member
(Title, if applicable)

▇▇▇▇▇▇▇▇▇▇ (Street Address)
▇▇▇▇▇▇, ID 83856
(City, State and Zip Code)
▇▇▇▇▇▇▇▇▇▇ (Federal Tax ID or SS#, if individual)

REDACTED

---

X _____ (Signature)
Witness

Subscribed and sworn to before me
This **20** day of **July**, 20 **09**

_____
NOTARY PUBLIC
My Commission expires: **10/22/2013**
(AFFIX SEAL)

Priest Lake Storage, LLC
(Name of Indemnitor)

BY: _____ (Signature)
Michael T. Sackett, Member
(Title, if applicable)

▇▇▇▇▇▇▇▇▇▇ (Street Address)
▇▇▇▇▇▇, ID 83856
(City, State and Zip Code)
▇▇▇▇▇▇▇▇▇▇ (Federal Tax ID or SS#, if individual)

REDACTED

---

X _____ (Signature)
Witness

Subscribed and sworn to before me
This **20** day of **July**, 20 **09**

_____
NOTARY PUBLIC
My Commission expires: **10/22/2013**
(AFFIX SEAL)

Sackett & Sackett, LLC
(Name of Indemnitor)

BY: _____ (Signature)
Michael T. Sackett, Member
(Title, if applicable)

▇▇▇▇▇▇▇▇▇▇ (Street Address)
▇▇▇▇▇▇, ID 83856
(City, State and Zip Code)
▇▇▇▇▇▇▇▇▇▇ (Federal Tax ID or SS#, if individual)

REDACTED

ORIGINAL IN SAFEKEEPING FILE

**OTHER INDEMNITORS (Continued):**

Sackett & Sackett, LLC
(Name of Indemnitor)

BY: _____ (SEAL)
(Signature)

Chantell R. Sackett, Member
(Title, if applicable)

[REDACTED]
(Street Address)

_____ ID 83856
(City, State and Zip Code)

[REDACTED]
(Federal Tax ID or SS#, if individual)

Witness: _____

Subscribed and sworn to before me
This 20 day of July, 2009

_____
NOTARY PUBLIC
My Commission expires: 10/22/2013
(AFFIX SEAL)

---

Michael T. Sackett
(Name of Indemnitor)

BY: _____ (SEAL)
(Signature)

N/A
(Title, if applicable)

[REDACTED]
(Street Address)

_____ ID 83848
(City, State and Zip Code)

[REDACTED]
(Federal Tax ID or SS#, if individual)

Witness: _____

Subscribed and sworn to before me
This 20 day of July, 2009

_____
NOTARY PUBLIC
My Commission expires: 10/22/2013
(AFFIX SEAL)

---

Chantell R. Sackett
(Name of Indemnitor)

BY: _____ (SEAL)
(Signature)

N/A
(Title, if applicable)

[REDACTED]
(Street Address)

_____ ID 83848
(City, State and Zip Code)

[REDACTED]
(Federal Tax ID or SS#, if individual)

Witness: _____

Subscribed and sworn to before me
This 20 day of July, 2009

_____
NOTARY PUBLIC
My Commission expires: 10/22/2013
(AFFIX SEAL)

*[Stamp: ORIGINAL IN SAFEKEEPING FILE]*

**OTHER INDEMNITORS (Continued):**

_____
(Name of Indemnitor)

BY: _____ (SEAL)
(Signature)

_____
(Title, if applicable)

Witness _____

Subscribed and sworn to before me

This _____ day of _____, 20___

_____
(Street Address)

_____
(City, State and Zip Code)

NOTARY PUBLIC
My Commission expires: _____
(AFFIX SEAL)

_____
(Federal Tax ID or SS#, if individual)

---

_____
(Name of Indemnitor)

BY: _____ (SEAL)
(Signature)

_____
(Title, if applicable)

Witness _____

Subscribed and sworn to before me

This _____ day of _____, 20___

_____
(Street Address)

_____
(City, State and Zip Code)

NOTARY PUBLIC
My Commission expires: _____
(AFFIX SEAL)

_____
(Federal Tax ID or SS#, if individual)

---

_____
(Name of Indemnitor)

BY: _____ (SEAL)
(Signature)

_____
(Title, if applicable)

Witness _____

Subscribed and sworn to before me

This _____ day of _____, 20___

_____
(Street Address)

_____
(City, State and Zip Code)

NOTARY PUBLIC
My Commission expires: _____
(AFFIX SEAL)

_____
(Federal Tax ID or SS#, if individual)

# THE
# CINCINNATI INSURANCE COMPANY
*AGREEMENT OF INDEMNITY*
*LIMITED LIABILITY COMPANY RESOLUTION*

P.O. Box 145496
Cincinnati, Ohio 45250-5496

## COPY OF RESOLUTION
### of The Board of Directors of
### Priest Lake Storage, LLC

At a Special meeting of the Members of Priest Lake Storage, LLC duly called and held at _Priest Lake_ on the _15_ day of _July,_ _2009_ a quorum being present, the following Preambles and Resolution were adopted: --

"WHEREAS, this Company is materially interested in the operations of **Mike Sackett, Inc., DBA Sackett Contracting & Excavating** (hereinafter for convenience called Principal), and said Principal has applied, or may hereafter apply, to THE CINCINNATI INSURANCE COMPANY for surety bonds or undertakings required by said Principal in connection with its operations; and

"WHEREAS, THE CINCINNATI INSURANCE COMPANY is willing to execute, as surety, bonds, or undertakings for the Principal upon being furnished with the written agreement of this Company to hold it harmless from and indemnify it against liability, loss, and expenses which it may sustain or incur in the consequence of its execution of any such bonds or undertakings;

"Now, therefore, be it,

"RESOLVED, that **Michael T. Sackett**, Member of the Company is authorized to execute on behalf of the Company and affix the Company's seal to any general or specific indemnity and hold harmless agreement or agreements as may be required by THE CINCINNATI INSURANCE COMPANY as a prerequisite to the execution by it of any surety bond or bonds or undertaking or undertakings for said Principal, such agreements to be in form and substance satisfactory to THE CINCINNATI INSURANCE COMPANY."

We,  Michael T. Sackett, Member
     Chantell R. Sackett, Member

we have compared the foregoing Preambles and Resolution with the original thereof, as they appear on the records of the meeting of the Board of Directors of said Company, and do certify that the same is correct and true transcript therefrom, and of the whole of said original Preambles and Resolution.

Given under my hand and seal of the Company, in the City of _Priest Lake_ State of _Idaho_
this day of _July 15_, 20_09_.

SIGNATURE OF ALL MEMBERS/

**ORIGINAL IN SAFEKEEPING FILE**

1 of 2

BN-1124E (06/06)

**SEE ATTACHED SIGNATURE PAGE(S)**

**SIGNATURE PAGE(S):**

| Witness | Michael T. Sackett, Member |
|---|---|
| X _(signature)_ | (Name of Member/Partner) |
| | BY: _(signature)_ (SEAL) |
| | (Signature) |

| Witness | Chantell R. Sackett, Member |
|---|---|
| _(signature)_ | (Name of Member/Partner) |
| | BY: _(signature)_ (SEAL) |
| | (Signature) |

[Seal: Priest Lake Storage, LLC / LTD. LIA. CO. / SEAL / IDAHO / 2006]

Witness _____  (Name of Member/Partner) _____
                                 BY: _____ (SEAL)
                                              (Signature)

Witness _____  (Name of Member/Partner) _____
                                 BY: _____ (SEAL)
                                              (Signature)

Witness _____  (Name of Member/Partner) _____
                                 BY: _____ (SEAL)
                                              (Signature)

Witness _____  (Name of Member/Partner) _____
                                 BY: _____ (SEAL)
                                              (Signature)

Witness _____  (Name of Member/Partner) _____
                                 BY: _____ (SEA)
                                              (Signature)

**ORIGINAL IN SAFEKEEPING FILE**

2 of 2

BN-1124E (08/06)

# THE
# CINCINNATI INSURANCE COMPANY
*AGREEMENT OF INDEMNITY*
*LIMITED LIABILITY COMPANY RESOLUTION*

P.O. Box 145496
Cincinnati, Ohio 45250-5496

## COPY OF RESOLUTION
### of The Board of Directors of
### Sackett & Sackett, LLC

At a Special meeting of the Members of Sackett & Sackett, LLC duly called and held at Priest Lake on the 15 day of July, 2009 a quorum being present, the following Preambles and Resolution were adopted: --

"WHEREAS, this Company is materially interested in the operations of Mike Sackett, Inc., DBA Sackett Contracting & Excavating (hereinafter for convenience called Principal), and said Principal has applied, or may hereafter apply, to THE CINCINNATI INSURANCE COMPANY for surety bonds or undertakings required by said Principal in connection with its operations; and

"WHEREAS, THE CINCINNATI INSURANCE COMPANY is willing to execute, as surety, bonds, or undertakings for the Principal upon being furnished with the written agreement of this Company to hold it harmless from and indemnify it against liability, loss, and expenses which it may sustain or incur in the consequence of its execution of any such bonds or undertakings;

"Now, therefore, be it,

"RESOLVED, that Michael T. Sackett, Member of the Company is authorized to execute on behalf of the Company and affix the Company's seal to any general or specific indemnity and hold harmless agreement or agreements as may be required by THE CINCINNATI INSURANCE COMPANY as a prerequisite to the execution by it of any surety bond or bonds or undertaking or undertakings for said Principal, such agreements to be in form and substance satisfactory to THE CINCINNATI INSURANCE COMPANY."

We,  Michael T. Sackett, Member
     Chantell R. Sackett, Member

we have compared the foregoing Preambles and Resolution with the original thereof, as they appear on the records of the meeting of the Board of Directors of said Company, and do certify that the same is correct and true transcript therefrom, and of the whole of said original Preambles and Resolution.

Given under my hand and seal of the Company, in the City of Priest Lake, State of Idaho, this day of July 15, 20 09.

SIGNATURE OF ALL MEMBERS MUST BE SECURED

**ORIGINAL IN SAFEKEEPING FILE**

1 of 2

BN-1124E (08/06)

SEE ATTACHED SIGNATURE PAGE(S)

SIGNATURE PAGE(S):

X _____[signature]_____  Michael T. Sackett, Member
Witness                  (Name of Member/Partner)
                         BY: _____[signature]_____ (SEAL)
                             (Signature)

X _____[signature]_____  Chantell R. Sackett, Member
Witness                  (Name of Member/Partner)
                         BY: _____[signature]_____ (SEAL)
                             (Signature)

[Seal: Sackett & Sackett, LTD. LIA. CO., IDAHO, 2006]

_____    (Name of Member/Partner)
Witness
                         BY: _____ (SEAL)
                             (Signature)

_____    (Name of Member/Partner)
Witness
                         BY: _____ (SEAL)
                             (Signature)

_____    (Name of Member/Partner)
Witness
                         BY: _____ (SEAL)
                             (Signature)

_____    (Name of Member/Partner)
Witness
                         BY: _____ (SEAL)
                             (Signature)

_____    (Name of Member/Partner)
Witness
                         BY: _____ (SEAL)
                             (Signature)

**ORIGINAL IN SAFEKEEPING FILE**

2 of 2

BN-1124E (08/06)

# PERFORMANCE BOND

Any singular reference to Contractor, Surety, Owner, or other party shall be considered plural where applicable.

**CONTRACTOR (Name and Address):**
Mike Sackett, Inc. dba Sackel Contracting & Excavating
PO BOX 368
Nordman, ID 83848

**SURETY (Name and Address of Principal Place of Business):**
The Cincinnati Insurance Company
827 W. First Ave., Suite 225
Spokane, WA 99201

**OWNER (Name and Address):**
Granite Reeder Water and Sewer District
PO BOX 456
Nordman, ID 83848

**CONTRACT**
Date: July 17, 2009
Amount: ($3,222,733.56) Three Million Two Hundred Twenty Two Thousand Seven Hundred Thirty Three Dollars and 56/100
Description (Name and Location):
Granite Reeder Wastewater Collection Sysem

**BOND**
Bond Number: B0321114
Date (Not earlier than Contract Date): July 17, 2009
Amount: ($3,222,733.56) Three Million Two Hundred Twenty Two Thousand Seven Hundred Thirty Three Dollars and 56/100
Modifications to this Bond Form: None

Surety and Contractor, intending to be legally bound hereby, subject to the terms printed on the reverse side hereof, do each cause this Performance Bond to be duly executed on its behalf by its authorized officer, agent, or representative.

**CONTRACTOR AS PRINCIPAL**
Company:
Mike Sackett Inc. dba Sacket Contracting & Excavating
Signature: _____ (Seal)
Name and Title:

**SURETY**

The Cincinnati Insurance Company _____ (Seal)
Surety's Name and Corporate Seal

By: _____
Signature and Title Nicholas W. Paget Attorney-in-Fact
(Attach Power of Attorney)

(Space is provided below for signatures of additional parties, if required.)

Attest: _____
Signature and Title Kele J. Yake
                    Office Manager

**CONTRACTOR AS PRINCIPAL**
Company:

Signature: _____ (Seal)
Name and Title:

**SURETY**

_____ (Seal)
Surety's Name and Corporate Seal

By: _____
Signature and Title
(Attach Power of Attorney)

Attest: _____
Signature and Title:

EJCDC No. C-610 (2002 Edition)
Originally prepared through the joint efforts of the Surety Association of America, Engineers Joint Contract Documents Committee, the Associated General Contractors of America, and the American Institute of Architects.

00610-1

1. Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors, and assigns to Owner for the performance of the Contract, which is incorporated herein by reference.

2. If Contractor performs the Contract, Surety and Contractor have no obligation under this Bond, except to participate in conferences as provided in Paragraph 3.1.

3. If there is no Owner Default, Surety's obligation under this Bond shall arise after:

   3.1. Owner has notified Contractor and Surety, at the addresses described in Paragraph 10 below, that Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with Contractor and Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract. If Owner, Contractor and Surety agree, Contractor shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive Owner's right, if any, subsequently to declare a Contractor Default; and

   3.2. Owner has declared a Contractor Default and formally terminated Contractor's right to complete the Contract. Such Contractor Default shall not be declared earlier than 20 days after Contractor and Surety have received notice as provided in Paragraph 3.1; and

   3.3. Owner has agreed to pay the Balance of the Contract Price to:

      1. Surety in accordance with the terms of the Contract;

      2. Another contractor selected pursuant to Paragraph 4.3 to perform the Contract.

4. When Owner has satisfied the conditions of Paragraph 3, Surety shall promptly and at Surety's expense take one of the following actions:

   4.1. Arrange for Contractor, with consent of Owner, to perform and complete the Contract; or

   4.2. Undertake to perform and complete the Contract itself, through its agents or through independent contractors; or

   4.3. Obtain bids or negotiated proposals from qualified contractors acceptable to Owner for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by Owner and Contractor selected with Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by Owner resulting from Contractor Default; or

   4.4. Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

      1. After investigation, determine the amount for which it may be liable to Owner and, as soon as practicable after the amount is determined, tender payment therefor to Owner; or

      2. Deny liability in whole or in part and notify Owner citing reasons therefor.

5. If Surety does not proceed as provided in Paragraph 4 with reasonable promptness, Surety shall be deemed to be in default on this Bond 15 days after receipt of an additional written notice from Owner to Surety demanding that Surety perform its obligations under this Bond, and Owner shall be entitled to enforce any remedy available to Owner. If Surety proceeds as provided in Paragraph 4.4, and Owner refuses the payment tendered or Surety has denied liability, in whole or in part, without further notice Owner shall be entitled to enforce any remedy available to Owner.

6. After Owner has terminated Contractor's right to complete the Contract, and if Surety elects to act under Paragraph 4.1, 4.2, or 4.3 above, then the responsibilities of Surety to Owner shall not be greater than those of Contractor under the Contract, and the responsibilities of Owner to Surety shall not be greater than those of Owner under the Contract. To a limit of the amount of this Bond, but subject to commitment by Owner of the Balance of the Contract Price to mitigation of costs and damages on the Contract, Surety is obligated without duplication for:

   6.1. The responsibilities of Contractor for correction of defective Work and completion of the Contract;

   6.2. Additional legal, design professional, and delay costs resulting from Contractor's Default, and resulting from the actions or failure to act of Surety under Paragraph 4; and

   6.3. Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or non-performance of Contractor.

7. Surety shall not be liable to Owner or others for obligations of Contractor that are unrelated to the Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than Owner or its heirs, executors, administrators, or successors.

8. Surety hereby waives notice of any change, including changes of time, to Contract or to related subcontracts, purchase orders, and other obligations.

9. Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the Work or part of the Work is located and shall be instituted within two years after Contractor Default or within two years after Contractor ceased working or within two years after Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10. Notice to Surety, Owner, or Contractor shall be mailed or delivered to the address shown on the signature page.

11. When this Bond has been furnished to comply with a statutory requirement in the location where the Contract was to be performed, any provision in this Bond conflicting with said statutory requirement shall be deemed deleted herefrom and provisions conforming to such statutory requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12. Definitions.

   12.1. Balance of the Contract Price: The total amount payable by Owner to Contractor under the Contract after all proper adjustments have been made, including allowance to Contractor of any amounts received or to be received by Owner in settlement of insurance or other claims for damages to which Contractor is entitled, reduced by all valid and proper payments made to or on behalf of Contractor under the Contract.

   12.2. Contract: The agreement between Owner and Contractor identified on the signature page, including all Contract Documents and changes thereto.

   12.3. Contractor Default: Failure of Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Contract.

   12.4. Owner Default: Failure of Owner, which has neither been remedied nor waived, to pay Contractor as required by the Contract or to perform and complete or comply with the other terms thereof.

FOR INFORMATION ONLY – Name, Address and Telephone    509-455-6767
Surety Agency or Broker Payne Financial Group, Inc.    827 W. First Ave., Suite 225, Spokane, WA 99201
Owner's Representative (engineer or other party) Welch Comer & Associates, Inc. 350 E Kathleen Ave., Coeur d'Alene, ID 83815

# PAYMENT BOND

Any singular reference to Contractor, Surety, Owner, or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Mike Sackett, Inc. dba Sacket Contracting & Excavating
PO BOX 368
Nordman, ID 83848

OWNER (Name and Address):
Granite Reeder Water and Sewer District
PO BOX 456
Nordman, ID 83848

SURETY (Name and Address of Principal Place of Business):

The Cincinnati Insurance Company
827 W. First Ave., Suite 225
Spokane, WA 99201

CONTRACT
Date: July 17, 2009
Amount: ($3,222,733.56) Three Million Two Hundred Twenty Two Thousand Seven Hundred Thirty Three Dollars and 56/100
Description (Name and Location):
Granite Reeder Wastewater Collection Sysem

BOND
Bond Number: B0321114
Date (Not earlier than Contract Date): July 17, 2009
Amount: ($3,222,733.56) Three Million Two Hundred Twenty Two Thousand Seven Hundred Thirty Three Dollars and 56/100
Modifications to this Bond Form:

Surety and Contractor, intending to be legally bound hereby, subject to the terms printed on the reverse side hereof, do each cause this Payment Bond to be duly executed on its behalf by its authorized officer, agent, or representative.

CONTRACTOR AS PRINCIPAL
Company:
Mike Sackett, Inc. dba Sacket Contracting & Excavating
Signature: _____ (Seal)
Name and Title:

SURETY
The Cincinnati Insurance Company _____ (Seal)
Surety's Name and Corporate Seal

By: _____
Signature and Title Nicholas W. Paget   Attorney-in-Fact
(Attach Power of Attorney)

(Space is provided below for signatures of additional parties, if required.)

Attest: _____
Signature and Title Kele J. Yake
                    Office Manager

CONTRACTOR AS PRINCIPAL
Company:

Signature: _____ (Seal)
Name and Title:

SURETY
_____ (Seal)
Surety's Name and Corporate Seal

By: _____
Signature and Title
(Attach Power of Attorney)

Attest: _____
Signature and Title:

EJCDC No. C-615 (2002 Edition)
Originally prepared through the joint efforts of the Surety Association of America, Engineers Joint Contract Documents Committee, the Associated General Contractors of America, the American Institute of Architects, the American Subcontractors Association, and the Associated Specialty Contractors.

00615-1

1. Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors, and assigns to Owner to pay for labor, materials, and equipment furnished by Claimants for use in the performance of the Contract, which is incorporated herein by reference.

2. With respect to Owner, this obligation shall be null and void if Contractor:
   2.1. Promptly makes payment, directly or indirectly, for all sums due Claimants, and
   2.2. Defends, indemnifies, and holds harmless Owner from all claims, demands, liens, or suits alleging non-payment by Contractor by any person or entity who furnished labor, materials, or equipment for use in the performance of the Contract, provided Owner has promptly notified Contractor and Surety (at the addresses described in Paragraph 12) of any claims, demands, liens, or suits and tendered defense of such claims, demands, liens, or suits to Contractor and Surety, and provided there is no Owner Default.

3. With respect to Claimants, this obligation shall be null and void if Contractor promptly makes payment, directly or indirectly, for all sums due.

4. Surety shall have no obligation to Claimants under this Bond until:
   4.1. Claimants who are employed by or have a direct contract with Contractor have given notice to Surety (at the addresses described in Paragraph 12) and sent a copy, or notice thereof, to Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.
   4.2. Claimants who do not have a direct contract with Contractor:
      1. Have furnished written notice to Contractor and sent a copy, or notice thereof, to Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials or equipment were furnished or supplied, or for whom the labor was done or performed; and
      2. Have either received a rejection in whole or in part from Contractor, or not received within 30 days of furnishing the above notice any communication from Contractor by which Contractor had indicated the claim will be paid directly or indirectly; and
      3. Not having been paid within the above 30 days, have sent a written notice to Surety and sent a copy, or notice thereof, to Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to Contractor.

5. If a notice by a Claimant required by Paragraph 4 is provided by Owner to Contractor or to Surety, that is sufficient compliance.

6. When a Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at Surety's expense take the following actions:
   6.1. Send an answer to the Claimant, with a copy to Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.
   6.2. Pay or arrange for payment of any undisputed amounts.

7. Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by Surety.

8. Amounts owed by Owner to Contractor under the Contract shall be used for the performance of the Contract and to satisfy claims, if any, under any performance bond. By Contractor furnishing and Owner accepting this Bond, they agree that all funds earned by Contractor in the performance of the Contract are dedicated to satisfy obligations of Contractor and Surety under this Bond, subject to Owner's priority to use the funds for the completion of the Work.

9. Surety shall not be liable to Owner, Claimants, or others for obligations of Contractor that are unrelated to the Contract. Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10. Surety hereby waives notice of any change, including changes of time, to the Contract or to related Subcontracts, purchase orders and other obligations.

11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the Work or part of the Work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Paragraph 4.1 or Paragraph 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12. Notice to Surety, Owner, or Contractor shall be mailed or delivered to the addresses shown on the signature page. Actual receipt of notice by Surety, Owner, or Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13. When this Bond has been furnished to comply with a statutory requirement in the location where the Contract was to be performed, any provision in this Bond conflicting with said statutory requirement shall be deemed deleted herefrom and provisions conforming to such statutory requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory Bond and not as a common law bond.

14. Upon request of any person or entity appearing to be a potential beneficiary of this Bond, Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15. DEFINITIONS
   15.1. Claimant: An individual or entity having a direct contract with Contractor, or with a first-tier subcontractor of Contractor, to furnish labor, materials, or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service, or rental equipment used in the Contract, architectural and engineering services required for performance of the Work of Contractor and Contractor's Subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials, or equipment were furnished.
   15.2. Contract: The agreement between Owner and Contractor identified on the signature page, including all Contract Documents and changes thereto.
   15.3. Owner Default: Failure of Owner, which has neither been remedied nor waived, to pay Contractor as required by the Contract or to perform and complete or comply with the other terms thereof.

| FOR INFORMATION ONLY – Name, Address and Telephone | |
|---|---|
| Surety Agency or Broker: Payne Financial Group, Inc. | 509-455-6767 827 W. First Ave., Suite 225, Spokane, WA 99201 |
| Owner's Representative (engineer or other party): Welch Comer & Associates, Inc. | 350 E Kathleen Ave., Coeur d'Alene, ID 83815 |

00615-2